IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
SOUTHERN DIVISION

JENNIFER THOMPSON and CHRISTOPHER DOXEY,
as Natural Parents and Next Friends of
ACD, A minor                                  **PLAINTIFFS**

1:22cv 125 LG-RPM

VERSUS               CIVIL ACTION NO. _____

PASS CHRISTIAN PUBLIC SCHOOL DISTRICT;
JONES COLLEGE;
JEDEDIAH "JED" MOONEY, individually;
KM, a Minor; CR, a Minor; LL, a Minor;
TC, a Minor; MM, a Minor; and
JOHN OR JANE DOES 1 - 10                        **DEFENDANTS**

## COMPLAINT
## [JURY TRIAL DEMANDED]

COME NOW the Plaintiffs, JENNIFER THOMPSON AND CHRISTOPHER DOXEY,

as Natural Parents and Next Friends of, ACD, a Minor, by and through undersigned counsel, and file

their Complaint against the Defendants named herein, as follows:

## PARTIES

1.  Plaintiffs, JENNIFER THOMPSON AND CHRISTOPHER DOXEY, and each of them,

are adult resident citizens of the Southern District of Mississippi. They bring this claim on behalf of

their son and next friend, ACD, a minor.

2.  Defendant, PASS CHRISTIAN PUBLIC SCHOOL DISTRICT ("PCSD"), is a school district

organized under the laws of the State of Mississippi and is a political subdivision within the State of

Mississippi, with the ability to sue and be sued, and which at all times relevant hereto employed

Defendant, JEDEDIAH "JED" MOONEY, and the as yet unidentified John or Jane Does 1-10.

PCSD may be served with process in the time and manner provided by law by and through service of

a Complaint and Summons upon its Superintendent, Dr. Carla J. Evers, Pass Christian, Mississippi.

1

3.   Defendant, JONES COLLEGE ("Jones"), is a community college organized under the laws of the State of Mississippi and is a political subdivision within the State of Mississippi, with the ability to sue and be sued, and which at all times relevant hereto employed the as yet unidentified John or Jane Does 1-10. Jones may be served with process in the time and manner provided by law by and through service of a Complaint and Summons upon its President, Dr. Jesse Smith, Ellisville, Mississippi.

4.   Defendant, JEDIDIAH "JED" MOONEY ("Jed Mooney"), is a person of full age and majority who is a citizen of and resides in the Southern District of Mississippi. At all pertinent and relevant times Jed Mooney was employed as an Assistant Principal in the PCSD, and was acting and/or neglected to act in the course and scope of his employment and under color of State law. Jed Mooney is made a defendant herein individually, and may be served process in the time and manner provided by law pursuant to Rule 4 of the Federal Rules of Civil Procedure wherever he may be found.

5.   Defendant, KM, is a minor resident citizen of the Southern District of Mississippi who may be served through his parents or guardians at 24926 Knollwood Dr., Pass Christian, Mississippi 39571.

6.   Defendant, CR, is a minor resident citizen of the Southern District of Mississippi who may be served through his parents or guardians at 10036 Lacy Noilet Road, Pass Christian, Mississippi 39571.

7.   Defendant, LL, is a minor resident citizen of the Southern District of Mississippi who may be served through his parents or guardians at 26255 Camille Drive, Pass Christian, Mississippi 39571

8.   Defendant, TC, is a minor resident citizen of the Southern District of Mississippi who may be served through his parents or guardians at their address in Pass Christian, Mississippi 39471.

9.   Defendant, MM, is a minor resident citizen of the Southern District of Mississippi who may be served through his parents or guardians at 214 East North Street, Pass Christian, Mississippi 39571.

10. Plaintiffs are ignorant of the true names and capacities of the Defendants sued as JOHN OR JANE DOES 1-10, inclusive, and therefore sue these Defendants by such fictitious names and

capacities. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each fictitiously-named Defendant is responsible in some manner for the occurrences alleged, and that ACD's injuries were proximately caused by the conduct of each such Defendant.

## JURISDICTION AND VENUE

11. Jurisdiction is vested in this Court under 28 U.S.C. §§ 1331 and 1343(a)(3), which grant this Court original jurisdiction of any civil action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 for the Plaintiffs' pendant State law claims. This civil action asserts federal constitutional claims and State law claims.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

13. Whenever and wherever reference is made in this Complaint to any act by a Defendant and/or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## FACTS

14. At all times relevant, the Defendants, acting individually and in concert with each other as set forth below, acted unreasonably, and with deliberate indifference to and in reckless disregard for the constitutional rights and the civil rights of the Plaintiff, ACD

15. Based on information and belief PCSD has a history of ignoring complaints of harassment and bullying. Based on information, PCSD has received complaints by students and parents about bullying, harassment, and other actions that violate its policies, and have ignored the complaints in violation of its own policies. Based on information and belief this behavior has been school district wide, taking place in multiple different schools within PCSD.

16. ACD is a minor child under the age of eighteen.

3

17. At the time of the events underlying these causes of action, ACD was a student entrusted to the care of PCSD and the other named Defendants at Pass Christian High School ("PCHS"), a school within PCSD.

18. At all times material times PCSD maintained a written policy prohibiting bullying and harassment. This policy was contained in PCSD's student handbook. At all material times PCSD had an unofficial policy and/or custom against enforcing such policies.

19. ACD was physically and mentally bullied and harassed during his time as a student in the PCSD.

20. In the fall of 2020, ACD was a ninth-grade student at PCHS. ACD has Darier Disease, a skin disease that flares up and becomes reactive any time his skin comes into contact with contaminants of any sort. This fact was known by the employees of PSCD / PCHS. ACD was also a member of the PCHS Soccer Team. ACD's condition was also known by the other minor members of the PCHS Soccer team.

21. ACD was bullied significantly and assaulted by multiple members of the soccer team throughout the '20-'21 school year. This included KM, a minor. The acts of bullying included stealing ACD's money from his bag, putting icy hot or bleach in his socks and shoes, dragging his shirt/jersey through the dirt and mud, and stomping on his clothes, so that his contaminated clothes would irritate ACD's skin condition and cause him physical pain as well as mental anguish. This activity usually occurred on PCSD grounds during practice or before games.

22. ACD and/or his parents complained to the PCSD / PCHS administration or soccer coach about the bullying, and/or said acts were known by and/or should have been known by PCSD. These calls for and/or obvious need for help went unanswered. The bullying continued. PCSD employees, including PCHS Assistant Principal Jed Mooney, were aware of the bullying. Jed Mooney encouraged,

or purposefully turned a blind eye to, his son's participation in the bullying. Assistant Principal Mooney frequently belittled ACD in the presence of one or more of the other minor Defendants.

23. On June 16, 2021, the PCHS Boys Soccer Team was transported to Jones via a PCSD owned school bus, for a several-days soccer camp. The players had been admonished by PCSD officials that it was "in your best interest" to attend the camp. Once at Jones, upon departing the bus, the student athletes were handed keys to their assigned dorms on the second floor of a Jones dormitory. No representative of PCSD or Jones accompanied the student athletes to their rooms. No representative of PCSD or Jones stayed on the dorm room floor with the student athletes, and/or supervised their stay there. During the entirety of ACD's stay in the Jones dorm rooms, no representative of PCSD and/or Jones checked in on or supervised the minor children while they were in the dorm rooms. PCSD student athletes from PCHS were left entirely unsupervised while in the dorms.

24. Between June 16-19, 2021, ACD was bullied, sexually harassed, assaulted, battered, sexually assaulted, humiliated, and abused by PCHS students and team members KM, CR, LL, TC, and MM, all minors. Beginning shortly after PCHS soccer team's arrival at the camp when ACD was getting ready for the first training session, he was physically assaulted and forcibly stripped of all his clothing by PCHS soccer team members KM, CM, LL, TC, and MM. Based on information and belief, MM videoed this event while other boys physically assaulted and stripped ACD of his clothes. MM and others shared video of this incident on Snapchat and/or other social media. On information and belief, this incident was seen by at least 1,000 people.

25. After training on the 16th, ACD went back to his room to take a nap. ACD was awakened by a Vienna sausage having been shoved into his throat and water thrown on him. PCHS soccer team members, KM, CR, LL, TC, and MM were the perpetrators. LL was assigned to be the

roommate of ACD. LL gave his key to ACD's room to the other perpetrators so they could enter ACD's room at any time.

26. After the attack, PCHS soccer team members when out to play a scheduled game that evening. After getting done, ACD showered and got ready for bed. ACD was then attacked, assaulted and physically stripped of his clothes by KM, CR, LL, and TC, while MM Videoed the event. During this attack the perpetrators facetimed a female student, and held ACD's legs and arms apart to show her his entire naked body. The video was then shared on social media, and again estimated to be viewed by over 1,000 people.

27. The next day, the student athletes woke up, ate breakfast, and were provided with baseball jerseys for pictures. Upon returning to the dorms after the picture session, ACD was physically assaulted and stripped of his clothing by the same five PCHS student athletes. Again, MM videoed the event, and shared it on Snapchat or other social media, resulting in numerous people viewing the video. Although LL was present for each event, and helped with some of the restraining, the primary actors for the physical assaults were TC, KM, and CR.

28. After the next training session, ACD returned to his room for a nap, and was awakened by the same students who doused his body with steaming hot ramen noodle water, aggravating his skin disease. This caused ACD to suffer intense itching for the remainder of the camp.

29. After the game on the 17th, ACD was changing in his room, and the same student athletes burst into his room, physically assaulted him, and stripped him naked for a fourth time. MM videoed the attack and shared it on social medial. After this attack, ACD went to sit with a friend in the lobby to get away from further bullying, but KM found him and started spitting on ACD from an overhanging ledge. Later that night, after ACD went to sleep he was awakened by something else being poured onto him. Based on information and belief, KM and CR masturbated and ejaculated into a bowl, and poured the bowl of collected hot semen onto ACD's face. This

degrading act was filmed and shared on Snapchat, Instagram, and possibly other social media sites by MM, KM, and others. A short, recovered clip of this assault was retrieved by ACD.

30. The next day, ACD awoke to find the degrading video of hot semen being poured on his sleeping face while other students watched and laughed had been shared on Snapchat "stories" of (at least) KM, CR, MM, and TC. When the students got on the bus to go home, KM continued bullying ACD, by taking ACD's blankets and pillows and putting stuff on them.

31. Based on information and belief student athletes were completely unsupervised by PCSD employees and Jones employees and representatives. KM and CR each had in their possession a "dap pen" and nicotine sticks. Further evidence of the lack of supervision included a video of CR high at the soccer camp at night.

32. Upon the return from soccer camp, PCHS students used the Pass Christian Soccer Team Group Me Account and/or group text to discuss what occurred on the trip, and coordinate the destruction of evidence. LL messaged that the trip to Jones was "for the books." After ACD noted he hated the trip, MM messaged that he knew, and SG messaged peanut icons to the group. MM messaged that he "don't think [ACD] had too much fun." KM responded with a crying/laughing emoji. TC admonished MM to "shut up" and not to text to the GC. KM advised those who were complicit that "if I were y'all, I would just say y'all was playing around you wasn't there." Referencing the fact that Principal West was asking to meet with parents and students, KM menacingly asked ACD "if you know anything about this", and AB (who apparently did not participate in the assaults) admonished "y'all better keep my fucking name out of yalls mouth." MM further admonished "When y'all go talk to Mr. West don't even say my name…" AB replied "if a anyone brings my name up I stfg I'm beating your fucking ass so bad idgaf who." TC threatened "y'all better say I was in my room."

33. Later, TC noted that Mr. West found out what happened at camp and TC threatened "[ACD] u say anything?" TC and MM then messaged back and forth about whether or not they could reset the group chat and delete all the other chats. SS joined the conversation to say "as long as no one shows the videos yall good." MM responded that it was too late, that Mr. West already got "one of the videos." KM messaged that "y'all tell me what [Mr. West] say I'm deleting snap I'll download it back tonight." TC noted "I'm just saying I was in my room." KM messaged he would say the "same." Then KM Messaged ACD "what you did bruh." MM asked ACD if sent Mr. West the video.

34. ACD continued to experience bullying and harassment by the same students. ACD's parents informed PCSD of the attacks.

35. ACD and his parents continued to report bullying and threatening behavior by the specific students pursuant to PCSD policy. These students that were harassing and bullying him were also spreading rumors. These specific acts of harassment were simply based on his sex. At no time did the PCSD and their employees follow its own policies regarding bullying, harassing, and threatening of students by other students. PCSD and its employees did little or nothing to stop the bullying.

36. PCSD took no action to protect ACD, in violation of PCSD's official school policy and Mississippi law, and refused to report the conduct to the authorities.

37. On information and belief, Jones also has policies and procedures related to protecting students from bullying and sexual misconduct. Jones took no action to protect ACD, in violation of Jones' official school policy and Mississippi law.

38. On information and belief, these actions have been so frequent that it has become the unofficial custom or policy of PCSD to fail to report the allegations and fail put forth any plans to prevent these behaviors.

8

39. As a result of PCSD's and Jones' actions and omissions, ACD suffered significant and serious injuries during and after said incidents. Following the incidents, Ms. Thompson took ACD to receive medical treatment, where ACD has received (and will likely need in the future) medical treatment for the injuries he suffered as a result of the Defendants' actions and omissions.

40. ACD's parents again complained to the PCSD / PCHS administration about the bullying and the incidents about these specific students. The administration refused to take any meaningful action. PCSD failed and refused to follow its own policies and procedures. ACD continued to get bullied, harassed, and threatened with no intervention of the PCSD.

41. For the protection of ACD, his parents were forced to remove him from school. His parents then enrolled him into the Gulfport School District for the 2021-2022 school year.

42. Based upon information and belief, Jed Mooney and other PCHS employees knew of this abuse and failed to notify the proper authorities of the frequent bullying, assault, and battery.

43. The conduct described in this Complaint constituted sexual harassment, as some or part of the harassment and treatment was as a result of ACD's sex.

44. Prior to and following this incident, PCSD and Jones failed to take any meaningful remedial or disciplinary action to correct the violation of ACD's rights. ACD continued to receive threats from the perpetrators. PCSD's and Jones' failure to take any meaningful disciplinary action against the perpetrators evidence PCSD's and Jones' ratification of the actions taken by the perpetrators and its administration and employees, and evidences the unofficial custom and policy of PCSD and Jones (that each does not enforce its own written anti-bullying policy). This unofficial custom and/or policy was the moving force behind the violation of ACD's constitutional right to bodily integrity.

45. In addition, ACD became extremely fearful of attending school and terrified that he might be subjected to further abuse.

46. ACD was physically injured and emotionally traumatized by the continual physical and mental

9

abuse, and the fear of further abuse.

47. Despite making every effort to ameliorate and improve this situation and help ACD, Ms. Thompson's and Mr. Doxey's expressions, concerns, and complaints to PCSD's personnel were not taken seriously and plans and requests to protect ACD were ignored and not followed through.

48. At all times herein, the Defendants acted under color of State law, within the course and scope of their employment, with deliberate indifference and reckless disregard to ACD's federally protected rights, with gross negligence, and negligence *per se* evidencing a willful, wonton, or reckless disregard for ACD's rights under Mississippi law.

49. At all times herein, the Defendant, Jed Mooney, acted under color of State law, within the course and scope of his employment, with deliberate indifference and reckless disregard for ACD's federally protected rights, with gross negligence, and negligence *per se* evidencing a willful, wonton, or reckless disregard for ACD's rights under Mississippi law.

50. Upon information and belief, PCSD and Jones had policies, practices, or customs in place which caused, ratified, and/or furthered the violation of Plaintiff's rights as described in this Complaint. Plaintiff accordingly seeks redress under 28 U.S.C. § 1983 for Defendants' violation of ACD's constitutional rights.

51. Defendants' established customs, policies, and practices directly and proximately caused the deprivation of the civil and constitutional rights of ACD as alleged in this Complaint, and the damages, emotional and mental pain and distress, and suffering of ACD.

52. At all material times the Defendants, each and all, acted willfully, maliciously, wantonly, unreasonably, recklessly, and with deliberate indifference to, and with intentional and wanton disregard of the constitutional and civil rights of ACD.

53. The Defendants, acting individually and together, under color of law, engaged in a course of conduct that caused the emotional and mental pain and suffering, injuries, and damages of ACD and

10

violated his rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

54. The Defendants are liable to Plaintiff, jointly and severally, for the wrongful acts complained of in this Complaint.

55. Plaintiffs fulfilled all notice requirements pursuant to Miss. Code Ann. §11-46-11 by sending a notice of claim to the Superintendent of PCSD and the President of the Board of Trustees, and to the Executive Director of Mississippi Community College Board, the President of Jones College, and the President of the Jones County Board of Supervisors. A copy of the Notice of Claim is attached as **Exhibit "A"** as though fully copied herein.

56. The actions of the Defendants were willfully in violation of Plaintiff, ACD's, federally protected rights, and said willful and reckless actions justify the imposition of punitive damages.

## CAUSES OF ACTION

### Claim 1 – Fourteenth Amendment Substantive Due Process

57. During all material times ACD had a clearly established constitutional right to bodily integrity and to be free from mental and physical abuse unrelated to the legitimate State goal of maintaining an atmosphere conducive to learning. Further, ACD had a clearly established constitutional right to his bodily integrity.

58. At material times the Defendants were vested with the State authority and the non-delegable responsibility and duty of adhering to, complying with and enforcing the laws of the United States of America and State of Mississippi. Consequently, while acting under color of State law, the Defendants engaged in a course of conduct and implemented a policy, custom, usage, plan or practice, wherein the rights, privileges or immunities of the Plaintiff were violated. Specifically, the Defendants, jointly and severally, engaged in a course of conduct that resulted in a violation of ACD's right to the equal protection of the laws of the United States of America and the corresponding provisions of the

11

Constitution of the State of Mississippi and the right to procedural and substantive due process of the law pursuant to the Fourteenth Amendment to the Constitution of the United States of America. The violations complained of in this Complaint include, but are not limited to, the failure to use proper care to uphold constitutional rights and privileges, deprivation of identifiable civil rights, i.e., life, liberty and/or property, the unnecessary and wanton infliction of pain and suffering, sexual degradation, embarrassment, humiliation and emotional distress and anguish in light of the circumstances confronted by the Defendants. The Defendants established a policy, custom, and practice that created a danger to students, such as the minor child ACD, and resulted in a deprivation that was sufficiently serious wherein the Defendants acted recklessly and/or with deliberate indifference towards the rights and safety of students and the minor child ACD, and allowed sexual predators to attack and sexually assault the minor child under the school's supervision and allow the student to be physically assaulted multiple times.

59. As a direct and proximate result of the acts and omissions of the Defendants, PCSD, Jones, and Jed Mooney, ACD's clearly established constitutional right, guaranteed under the Fourteenth Amendment, to bodily integrity was violated, which violations caused injury to ACD.  These Defendants learned of the bullying, sexual assault, and assault by classmates and demonstrated deliberate indifference toward ACD's right to bodily integrity by failing to take action that was obviously necessary to stop the assaults and bullying.

60. Plaintiffs request judgment against all Defendants, for compensatory and punitive damages in whatever amount the jury may determine, plus costs, interest, and attorney's fees.

61. The Defendants, PCSD and Jones, each had a duty to train and supervise teachers, and other personnel in order to ensure the safety and well-being of students entrusted to their care and supervision. The Defendants, PCSD and Jones, each failed to discharge these duties. This failure was

a moving force behind the violation of ACD's constitutional right to bodily integrity under the Fourteenth Amendment.

62. The Defendants, PCSD and Jones, acted intentionally in failing to adequately train and supervise their teachers and other personnel on Educator Ethics, mandatory reporting, and PCSD and Jones policy on bullying and harassment.

63. As a result, ACD suffered physical and emotional abuse in direct violation of State law and Department of Education regulations and in violation of his constitutional rights.

64. The supervisory Defendants, PCSD's and Jones', failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of ACD's constitutional rights as described herein.

65. The acts and omissions of the Defendants were conducted within the scope of their official duties and employment and under color of State law.

66. The acts and omissions of the supervisory Defendants, as described above, caused Plaintiffs' damages in that he suffered physical and mental pain and lasting damage that ACD will endure in the future.

### Claim 2 – Civil Conspiracy

67. The Defendants PCSD and Jones were the final authority and the governmental entity responsible for establishing, implementing, promulgating, and enforcing their respective policies, customs and practices concerning the safety and welfare of students while on school campuses and/or school property, and/or under school custody and/or supervision.

68. Mississippi law and federal law prohibits conspiracies to interfere with the rights of others.

69. Based on information and belief PCSD, by and through its agents, set up and monitored a Pass Christian Soccer Team Group Me Account or group text ("group text").

70. Defendants entered into an agreement and combined among themselves and/or with others to engage in unlawful conduct, i.e. conspired to help ACD's assailants, KM, CR, LL, TC, and MM, evade criminal prosecution for their acts of assault and sexual assault on the group text.

71. Defendants, PCSD, KM, CR, LL, TC, and MM, and the as yet unidentified John or Jane Does, conspired, having knowledge that wrongs conspired to be done or were about to be committed, or should have had knowledge of such wrongs; failed to prevent such wrongs, and having the power to prevent or aid in preventing the commission of the same, neglected and refused to do so.

72. Defendants have each committed acts in furtherance of this conspiracy whereby ACD was injured and deprived of rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution as well as corresponding provisions of the Constitution of the State of Mississippi.

73. Defendants PCSD, KM, CR, LL, TC, and MM, and the as yet unidentified John or Jane Does, each had actual knowledge of the conspiracies to deprive ACD of his rights or should have had knowledge, and each had the power and opportunity to prevent the violations from occurring and/or continuing to do so.

74. These Defendants received complaints and inquiries from ACD and/or ACD's parents regarding the sexual battery as well as the bullying and harassment of this minor child while on school property. As a result of these complaints and inquiries, the Defendants had actual knowledge that the policies, customs, and/or regulations for the safety and welfare of students were inadequate, but they failed to take corrective action to reduce or prevent the danger or to make sure the minor Plaintiff was not subjected to further sexual battery and/or physical or mental harm while attending school or on school property and/or under school custody or supervision. The Defendants' failure to take corrective action against the students that committed the sexual battery or the students who were bullying and harassing, and the abysmal failure to protect the minor Plaintiff from further abuse while

at school or on school property and/or under school custody or control, and the active efforts to conceal and destroy evidence of the sexual assault and battery of ACD and dissemination of same across the world wide web, constitutes deliberate indifference for the rights and safety of PCSD's students and the minor child named herein, such that it shocks the conscience, and constitutes a deliberate decision by these government officials and entities and these minor students to deprive ACD of his constitutional rights.

75. As a direct and proximate result of the foregoing, Defendants deprived ACD of his rights and privileges as a citizen of the United States and the State of Mississippi, and Defendants by and through their actions and/or inactions intentionally or through their own negligence, failed to expose, prevent or otherwise thwart the conspiracy to deprive ACD and other persons similarly situated, of equal protections of the laws of this Nation and the State notwithstanding the fact that they possessed the authority, power, and ability to halt, annul, void, expose, intervene in or stop the violations before they occurred. Consequently, these Defendants caused ACD to suffer significant indignities, pain and suffering, and to sustain shock and injury to his nervous system and person, and physical, mental, and emotional suffering and injuries, all of which has caused the general damages requested by Plaintiffs in a sum which will be proven at trial.

### Claim 3 – Negligence under the MTCA

76. The Defendants, PCSD and Jones, through the acts and omissions of their employees and agents, are liable to ACD for the breach of their ministerial duty to supervise the minor children under their care, in particular ACD; and their duty to provide a safe school environment free from bullying and abuse.

77. The actions of Defendants violated the PCSD's and Jones' policies, procedures, rules, and regulations, the Educators Code of Ethics, as well as the Laws of the State of Mississippi and the United States of America.

78. PCSD and Jones, and their teachers, administrators, and employees were not properly supervising the minor children and students under their care and as a result of their negligence, negligence *per se*, and/or gross negligence ACD was injured while attending school and/or school functions.

79. The Plaintiffs would aver that the Defendants, PCSD and Jones, are liable for the physical and emotional damages inflicted upon the minor child due to PCSD's and Jones failure to properly supervise and train their employees and failure to provide a safe school environment free from bullying and abuse, resulting in PCSD's and Jones' employees not providing ordinary care to ACD and the minor children for which they had a duty to provide care.

80. Plaintiffs would show that pursuant to the Student Handbook and the Policies and Procedures of PCSD and Jones that PCSD and Jones owed ACD certain duties and each was required to act with ordinary care. Further, that these policies and procedures, along with the law of the State of Mississippi required each of the Defendants to perform certain required actions. PCSD and its employees, and Jones and its employees, violated these requirements evidencing a lack of ordinary care, thus PCSD's actions and Jones' actions were negligent *per se*.

81. The failure of PCSD and Jones to protect ACD from the sexual assaults, bullying, and degrading treatment received at the hands of his fellow students and teammates constituted a breach of their ministerial duties, including a failure to exercise ordinary care in the execution of their mandate to provide a safe school environment for students and to take reasonable steps to minimize foreseeable risks to students (Miss. Code Ann. § 37-9-69); as well as a breach of their ministerial duty to prevent bullying (Miss. Code Ann. §§ 37-11-67; and 37-11-69). ACD was a member of the class of persons protected by these statutes, making PSCD and Jones liable for negligence *per se*.

82. The Defendants, PCSD and Jones, through the acts and omissions of their employees and agents are liable to ACD for the breach of their duties owed to ACD in providing a safe learning environment and failing to enforce their own policies and procedures.

83. The Defendants' failure and/or refusal to provide for the safety and welfare of students, including ACD, while attending school and/or on school property and/or under school custody or supervision, constituted a breach of non-delegable and/or fiduciary duties owed to the Plaintiffs and other persons similarly situated.

84. As a direct and proximate consequence of the breach of this non-delegable and/or fiduciary duty of the aforementioned Defendants, the Defendants are jointed and severally liable for the injuries and damages suffered by the Plaintiffs. Plaintiffs are entitled to a money judgment against the Defendants, who engaged in or contributed to or otherwise facilitated through their acts, of omission or commission, the breach of non-delegable and/or fiduciary duties that resulted in ACD's injuries and also caused or contributed to cause the instance of sexual battery, the instance of physical assault and battery, the instances of bullying and harassment suffered by ACD, and for past, present and future medical damages and medical treatment and such other damages to which Plaintiffs may be entitled.

85. The Defendants had a duty to act as reasonable, prudent schools, school districts, administrators and like entities, and to take reasonable and necessary precautions to ensure the safety and welfare of their students and students under their custody or care, and to ensure that individuals do not commit sexual assault, sexual battery, or heinous acts upon any students while on school property.

86. The Defendants breached their duty of care by failing to provide for the safety and welfare of students, and in particular the safety and welfare of ACD. The Defendants' failures and breaches resulted in the minor child suffering numerous incidents of sexual battery, assault, battery, bullying,

and/or harassment while attending school and/or while on school property and under school custody and care. Each such incident constitutes a separate and independent tort under the Mississippi Tort Claims Act.

87. As a direct and proximate consequence of the Defendants', and each of their, failure to act, ACD suffered severe pain, suffering, humiliation, mental and emotional distress, and past, present and future medical damages and medical treatment. Plaintiffs are entitled to a money judgment for actual and consequential damages as stated herein.

88. The Defendant, Jed Mooney, to the extent that his acts are determined to have occurred outside the course and scope of his employment, is individually liable to ACD for the damages suffered.

89. The actions of Defendants, PCSD, Jed Mooney, and Jones violated the policies, procedures, rules, and regulations of PCSD and Jones and the State of Mississippi, as well as the Law of the State of Mississippi and the United States of America.

90. As a direct and proximate result of the foregoing, Plaintiffs suffered financial injury, significant indignities, and to be hurt and injured in ACD's health, strength and activity, sustaining injury to his body and shock and injury to his nervous system and person, which have caused, and will continue to cause, ACD physical, mental, and emotional pain and suffering, all to his general damage in a sum which will be proven at trial.

### Claim 4 – Sexual Harassment/Sexual Discrimination Under Title IX

91. PCSD and Jones are recipients of federal education funds under Title IX of the Education Amendments of 1972 (20 U.S.C. §1681 et seq.).

92. Title IX of the Education Amendments of 1972 makes it unlawful to create an intimidating, hostile, offensive, and abusive school environment.

93. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs, and usages of PCSD and/or Jones.

94. Both PCSD and Jones, as a result of receiving federal funding, must protect their community from sex-based discrimination or harassment, including sexual violence.

95. ACD was a minor male citizen of Mississippi and is a member of a protected class. ACD attended school during the relevant times at Pass Christian High School.

96. The conduct of certain students in the PCSD and Jed Mooney, as described above, lasted for the better part of a year, and was so severe and pervasive, it made it impossible for ACD to derive any meaningful education while at PCSD.

97. PCSD's and Mooney's decision to remain idle in face of known harassment and discriminate conduct that was so severe and offensive has barred ACD from access to educational benefit and a clear violation of Title IX by remaining deliberate indifferent to acts of student on student harassment of which it had actual knowledge.

98. Based on information and belief, PCSD was well aware of the actions of the students and the student-on-student harassment. Based on information and belief PCSD officials, administrators, and/or employees, including but not limited to Jed Mooney, knew of the harassment, but consciously chose not to implement the safeguards of the school policy to prevent the harassment. Defendants' actions, including the decision not to remedy the violation, amounted to deliberate indifference

99. The conduct of PCSD and Jones and their employees effectively barred ACD's access to any educational opportunity or benefit.

100. PCSD and Jones failed to establish procedures for handling complaints of sex-discrimination and sexual violence.

101. Failure of PCSD and Jones to establish such procedures led to ACD suffering retaliation from the perpetrators for reporting the incidents.

102. As a direct and proximate result of PCSD's and Jones' actions, ACD suffered injuries and losses as described herein, and suffered a loss of rights guaranteed by Title IX.

103. Defendants, acting under color of state law, violated the federally protected rights of ACD and ACD suffered damages as a result.

### Claim 5 - Sexual Harassment/Sexual Discrimination
### Under the Fourteenth Amendment

104. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

105. At all material times Defendants and their agents were acting under color of the laws, customs, and usages of PCSD and Jones within the meaning of 42 U.S.C. § 1983.

106. ACD was a minor male citizen Mississippi and is a member of a protected class.

107. Defendants condoned sexual harassment through their above-described behavior. Defendants, PCSD's and Jones', conduct was sufficiently severe, persistent, and/or pervasive that it adversely affected ACD's education and created a hostile and abusive education environment.

108. Defendants, PCSD and Jones, failed to use any procedures whatsoever to undertake a responsive action to end the sexual harassment and to prevent its recurrence.

109. Defendants, PCSD and Jones, knew or should have known of the unlawful conduct of the students on their property and/or under their custody and/or care. PCSD's and Jones' own discriminatory conduct was identifying the discriminatory and/or harassing conduct, identifying a procedure to help rectify the conduct, and then consciously failing to implement the procedure. This conduct was, in whole or in part, based on ACD's sex.

110. PCSD and Jones vested their administrators and teachers, including the individual Defendants, with supervisory power over the offending students and actually knew of the abuse, and had the power to end the abuse. PCSD and Jones, and their employees failed to take necessary steps to end and/or prevent the abuse.

20

111.   The Defendants' failure to remedy and prevent unlawful conduct, and failure to remedy and prevent such violations of law, demonstrated deliberate indifference to the risk that such activities would result in constitutional violations.

112.   The Defendants, PCSD and Jones, implicitly and explicitly, with intent and knowledge of the foreseeable consequences, condoned, authorized, or ratified the conduct of the employees and students which promoted or permitted a school environment where such conduct was tolerated, condoned, or encouraged, and systematically violated their own purported policies and procedures prohibiting sexual harassment/discrimination in the school.   Sex discrimination through sexual harassment was the custom, usage, and unwritten policy of PCSD. The Defendants were deliberately indifferent to the unlawful and unconstitutional activities that occurred daily or on an ongoing, regular basis at PCSD and Jones.

113.   PCSD and Jones failed to establish and implement procedures for handling complaints of sexual discrimination and sexual violence.

114.   The failure of PCSD and Jones to establish and implement procedures for handling complaints of sexual discrimination and sexual violence violated Title IX. This violation led to the perpetrators retaliating and harassing ACD.

115.   Defendants, acting under color of state law, violated the federally protected rights of Plaintiff in violation of 42 U.S.C. § 1983 and the Plaintiff suffered damages as a result.

### Claim 6 – Negligent Infliction of Emotional Distress

116.   The negligent and/or arbitrary, capricious, willful and intentional acts and omissions of Defendants, and each of them, were reasonably foreseeable to inflict and have inflicted and continue to inflict emotional distress on ACD, for which ACD demands judgment in an amount to be determined by the Jury at the trial of this case.

21

117. As a direct result of the Defendants' negligent acts in their failure to maintain a safe, hazard free environment for the minor children under their supervision and control, the minor Plaintiff has endured over a year of emotional distress.

118. The minor Plaintiff suffered injuries as a result of the Defendants', and each of their, negligence, including:

    a. Emotional injuries and severe mental anguish;

    b. Physical injuries, along with other injuries to his person,

    c. Past, present, and future physical and emotional pain and suffering which is grievous, and

    d. Medical bills  and other medical and medically related expenses which have been incurred and which may be incurred in the future.

**Claim 7 – Intentional Infliction of Emotional Distress**

119. The capricious, willful and intentional acts and omissions of Defendants, and each of them, were reasonably foreseeable to inflict and have inflicted and continue to inflict emotional distress on ACD, for which ACD demands judgment in an amount to be determined by the Jury at the trial of this case.

120. At all times relevant to the instant cause of action, Defendants Jed Mooney, KM, CR, LL, TC, and MM engaged in outrageous conduct towards ACD, with the intention to cause or with reckless disregard for the probability of causing ACD to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to ACD. As a proximate result of said conduct, ACD has suffered and continues to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as loss of enjoyment of life, all to his damage in amounts to be proven at trial. The Defendants' actions caused Plaintiff harm, including but not limited to embarrassment, humiliation, degradation, fear,

stress, anxiety, inconvenience, mental and emotional anguish, mental and emotional pain and suffering, loss of earning capacity, loss of career opportunities, loss of enjoyment of life and other non-pecuniary damages in amounts to be determined at trial.

121.  With respect to those allegations set forth above, ACD contends that he has suffered serious emotional distress and humiliation, as well as mental and emotional injury due to the actions of the Defendants, that he is therefore entitled to specific redress for damages sustained by him as a result of the acts, practices and omissions on the part of the Defendants. In this respect, specifically, but not necessarily limited to, the minor Plaintiff charges that the Defendants subjected him to intentional infliction of emotional distress. As a result of these actions and omissions on the part of the Defendants, ACD contends that he is entitled to an award of compensatory damages against the Defendants jointly and severally, and that further, as a result of their willful and wanton actions and omissions, the minor Plaintiff is further entitled to an award of punitive damages as well in order to punish the Defendants for their wrongful conduct.

### Claim 8 – Assault and Battery

122.  Defendants, KM, CR, LL, TC, and MM, and each of them, engaged in a sexual assault, assault, and battery on ACD with the intent to cause harmful and offensive contact with body parts of the Plaintiff's body. As described above, these Defendants engaged in harmful and offensive contact by sexually abusing and touching Plaintiff without his consent, and by the conduct described herein, including laying hands on him, forcibly stripping his clothes from his body, shoving a Vienna sausage into his throat and throwing water on him, throwing steaming hot ramen noodles on him, putting allergens in his clothes causing itching, and pouring hot semen onto his face.

123.  Defendants, Jones and PCSD, ratified Defendants KM's, CR's, LL's, TC's, and MM's unlawful conduct as described herein by: (1) Not contacting the law enforcement when the incidents happened; (2) not contacting law enforcement after being notified of the incidents; (3) having school

23

officials conduct investigations after being notified, instead of trained law enforcement professionals; and (4) not imposing meaningful, timely discipline on the perpetrators.

124. As a direct and proximate result of the tortious, unlawful, and wrongful acts and conduct of the Defendants the Plaintiff suffered the injuries and damages described in this Complaint.

## DAMAGES AND REMEDIES

125. As a result of Defendants', and each of their actions and omissions, Plaintiffs are entitled to recover damages including, but not limited to, the following from Defendants, jointly and severally, in amounts determined by the Jury at the trial of this case:

  a. Past, present, and future economic damages, including but not limited to medical bills, school relocation expenses and other incidental damages, and others;

  b. Past, present, and future emotional distress and mental anguish, inconvenience, pain, suffering, humiliation, shame, loss of enjoyment of life, loss of self-esteem, loss of his good name, loss of esteem and respect from the community, fear and embarrassment, and injury to reputation, and any other non-economic damages all of which Plaintiff suffered;

  c. All incidental damages, including the costs related to having to transfer schools;

  d. All other economic and non-economic damages recoverable by law;

  e. Attorneys' fees and expenses;

  f. Pre-judgment interest running from the date of the wrongful conduct or such other date that the Court finds to be reasonable;

  g. Post judgment interest; and

  h. All other damages, equitable and/or other relief available to the Plaintiffs under federal and state law.

## Punitive Damages

126.  Defendants', and each of their, acts and omissions are so egregious as to evoke outrage and rise to the level of an independent tort, and/or represent reckless disregard for the safety and well-being of members of the public, including ACD, such that Defendants and each of them should be required to pay punitive damages in an amount sufficient to punish Defendants, and to make an example to deter Defendants and others from engaging in such conduct in the future said amounts to be determined by the Jury of the trial of this case

127.  On information and belief, Plaintiff alleges that ACD's injuries will be permanent and they have had significant consequences on his life.

128.  That the aforesaid damages to the Plaintiff having been proximately caused by the negligence, gross negligence, wanton indifference, reckless disregard, and/or malicious or intentional acts of the Defendants, Plaintiffs are entitled to sue and recover damages proximately resulting therefrom, including compensatory damages, economic damages, non-economic damages, punitive damages, attorney's fees, pre-judgment and post-judgment interest, and such other relief as Plaintiff may be entitled to under the laws of Mississippi and the United States.

WHEREFORE, PREMISES CONSIDERED, your Plaintiffs, JENNIFER THOMPSON AND CHRISTOPHER DOXEY, as Natural Parents and Next Friends of, ACD, A Minor, demand judgment of and from the Defendants in an amount that will reasonably compensate Plaintiffs for all injuries and/or damages and to punish Defendants in order to deter future wrongful conduct, with said damages to include compensatory damages, in an amount determined by a jury, as well as punitive damages, in an amount determined by a jury, attorney's fees, and costs of these proceedings, pre-judgment and post-judgment interest, and such other relief as Plaintiffs may be entitled to under the laws of the State of Mississippi and the United States of America, and any and all other relief this Honorable Court deems just, proper, and equitable.

ON THIS the ___13th___ day of May, 2022.

Respectfully submitted,
**JENNIFER THOMPSON AND CHRISTOPHER DOXEY, as Natural Parents and Next Friends of ACD, A Minor**

BY: _____
      DOUGLAS L. TYNES, JR. (MSB # 101921)

Christopher C. Van Cleave, Esquire
Van Cleave Law, P.A.
146 Porter Avenue
Biloxi, Mississippi 39530
Phone: 228-432-7826
Fax:    228-456-0998
christopher@vancleavelaw.com
sandy@vancleavelaw.com
summer@vancleavelaw.com

DOUGLAS L. TYNES, JR. (MSB # 101921)
Tynes Law Firm, P.A.
525 Krebs Avenue (39567)
Post Office Drawer 966
Pascagoula, MS 39568-0966
228.769.7736 Telephone
228.769.8466 Facsimile
monte@tyneslawfirm.com
courtney@tyneslawfirm.com