IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JENNIFER THOMPSON and
CHRISTOPHER DOXEY, as
Natural Parents and Next
Friends of ACD, a minor                                      PLAINTIFFS

v.                                           CAUSE NO. 1:22cv125-LG-RPM

PASS CHRISTIAN PUBLIC
SCHOOL DISTRICT; JONES
COLLEGE; JEDEDIAH "JED"
MOONEY, individually;
BRENDAN CONNOLLY,
individually; KM, a minor;
CR, a minor; LL, a minor; TC,
a minor; MM, a minor; and
JOHN OR JANE DOES 1-10                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER
CONCERNING DEFENDANTS' MOTIONS TO DISMISS

**BEFORE THE COURT** are the [51] Motion to Dismiss or for Summary

Judgment filed by Defendant Jones College, the [61] Motion to Dismiss filed by

Defendant MM, the [67] Motion to Dismiss or for Summary Judgment filed by

Defendant Brendan Connolly, the [71] Motion to Stay Proceedings filed by Plaintiffs

Christopher Doxey and Jennifer Thompson, the [86] Motion to Dismiss filed by

Defendant Pass Christian School District ("PCSD"), and the [88] Motion to Dismiss

filed by Defendant LL.  The parties have fully briefed the Motions.  After reviewing

the submissions of the parties, the record in this matter, and the applicable law, the

Court finds that: (1) the Motion to Dismiss filed by Jones College should be granted

in part and denied in part; (2) the Motion to Dismiss filed by MM should be granted

in part and denied in part; (3) the Motion to Dismiss filed by Connolly should be granted; (4) the Motion to Stay Proceedings filed by Plaintiffs should be denied; (5) the Motion to Dismiss filed by PCSD should be granted in part and denied in part; and (6) the Motion to Dismiss filed by LL should be denied.

## BACKGROUND

Plaintiffs filed this lawsuit alleging that their son, ACD, was bullied during his freshman year at Pass Christian High School ("PCHS") by other members of the PCHS soccer team.  Plaintiffs further allege that ACD was bullied by his teammates while participating in an overnight soccer camp at Jones College.  In addition to Jones College and PCSD, Plaintiffs have sued several of ACD's former teammates, PCHS Assistant Principal Jedidiah "Jed" Mooney, and Jones College Head Soccer Coach Brendan Connolly.

ACD suffers from Darier Disease, which causes his skin to "flare[ ] up and become[ ] reactive any time his skin comes into contact with contaminants of any sort." (1st Am. Compl. at 4, ECF No. 42).  Plaintiffs claim that ACD's teammates and employees of PCSD and PCHS were aware of ACD's skin condition.  Plaintiffs assert:

> The acts of bullying included stealing ACD's money from his bag, putting icy hot or bleach in his socks and shoes, dragging his shirt/jersey through the dirt and mud, and stomping on his clothes, so that his contaminated clothes would irritate ACD's skin condition and cause him physical pain as well as mental anguish.  This activity usually occurred on PCSD grounds during practice or before games.

(*Id.* at 4-5).  Plaintiffs claim that they "and/or ACD complained to the PCSD/PCHS administration or soccer coach about the bullying, and/or such acts were known by

and/or should have been known by PCSD," but PSCD employees did not take action to stop the bullying.  (*Id.* at 5).  Plaintiffs further allege that Assistant Principal Mooney either encouraged or purposefully turned a blind eye to the bullying and "frequently belittled ACD in the presence of one or more of the other minor Defendants."  (*Id.*).  Mooney's minor son allegedly participated in the bullying.

On June 16, 2021, members of the PCHS Boys Soccer Team, including ACD and the minor defendants, were transported to Jones College on a PCSD school bus to participate in a soccer camp that lasted several days.  Plaintiffs claim that the minor students, including ACD, were not supervised in the dorm rooms where they stayed during the camp, and ACD was "bullied, sexually harassed, assaulted, battered, sexually assaulted, humiliated, and abused by PCHS students and team members KM, CR, LL, TC, and MM."  (*Id.* at 6.)  For example, the minor defendants allegedly stripped ACD of his clothing on multiple occasions and shared video of these assaults via social media.  Plaintiffs claim that ACD's teammates also poured hot ramen noodle water and hot semen on ACD during the camp at Jones College. Plaintiffs claim that the defendants violated ACD's rights to procedural due process, substantive due process, and equal protection.  They have also filed Title IX and Fourteenth Amendment claims for sexual harassment and sexual discrimination, a civil conspiracy claim, a Mississippi Tort Claims Act negligence claim, a negligent

infliction of emotional distress claim, an intentional infliction of emotional distress claim, and an assault and battery claim.[1]

## DISCUSSION

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume that "all the allegations in the complaint are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).

PCSD did not provide any evidence outside the pleadings in support of its Motion. Jones College and Connolly provided evidence outside the pleadings to the extent that they were seeking summary judgment as an alternative to Rule 12(b)(6) dismissal. The Court declines to convert these motions to motions for summary

---

[1] Plaintiffs' First Amended Complaint appeared to assert all claims against all defendants, but Plaintiffs have since clarified that they do not claim that the minor defendants were state actors under Mississippi or federal law. (*See, e.g.*, Pls.' Mem. at 8, ECF No. 92).

judgment, and it has not considered any evidence outside the pleadings. The Court further finds that Plaintiffs' Motion for a Stay of Proceedings so that they can conduct additional discovery concerning Jones College's Motion should be denied. Discovery is inappropriate since the motion has not been converted to a motion for summary judgment.

## I. SECTION 1983 CLAIM FOR SUBSTANTIVE DUE PROCESS:

A Section 1983 claim requires that a plaintiff "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 687-88 (5th Cir. 2017). Both Jones College and PCSD argue that Plaintiffs' claims against them should be dismissed because Jones College and PCSD did not have a constitutional duty to protect ACD from private harm. Meanwhile, Connolly, who was sued in his individual capacity, has asserted the defense of qualified immunity as to Plaintiffs' substantive due process claim. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017). Once a defendant raises this defense, the burden of demonstrating that the defense is inapplicable shifts to the plaintiff. *Id.* "To meet this burden, the plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* Therefore, the Court must consider

whether Plaintiffs have alleged that PCSD, Jones College, and/or Connolly violated ACD's constitutional right to substantive due process.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Therefore, the Supreme Court has held that the Clause generally does not impose an affirmative obligation on the State to provide the general public with protection from the acts of third parties. *Id.* at 195-96.[2]

The Supreme Court has recognized one exception to this principle — the State has a duty to protect citizens from private violence where the State enters

---

[2] In the present case, Plaintiffs cite *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), and other similar cases in support of their argument that defendants violated ACD's constitutional rights by failing to take action when they knew or should have known about the bullying. However, these cases involved abuse by state actors, such as teachers, coaches, and sheriff's deputies, not third parties. The distinction is that the Due Process clause "forbids the *State itself* to deprive individuals of life, liberty, or property without 'due process of law.'" *DeShaney*, 489 U.S. at 195 (emphasis added). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. The latter situation (failure to protect from private violence) is at issue in the present case, while the former situation (State deprivation) was at issue in *Doe v. Taylor*.

into a special relationship with the plaintiff by taking that person into its custody and holding him there against his will. *DeShaney*, 489 U.S. at 199-200. In that limited circumstance, "the Constitution imposes upon [the State] a corresponding duty to assume some responsibility for his safety and general well-being." *Id.*

Plaintiffs have not demonstrated that a special relationship existed between ACD and PCSD, Jones College, or Connolly. The Fifth Circuit has repeatedly rejected the argument that public schools have a special relationship with their students. *See, e.g., Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 857-58 (5th Cir. 2012) ("Without a special relationship, a public school has no constitutional duty to ensure that its students are safe from private violence.").[3] In addition, the Fifth Circuit has determined that a student who resided in the dormitory at the Mississippi School for the Deaf was not in a special relationship with the school because the plaintiff was voluntarily within the care or custody of the school. *Walton v. Alexander*, 44 F.3d 1297, 1305 (5th Cir. 1995). Therefore, a special relationship was not created even when ACD was staying in a Jones College dormitory for overnight soccer camp because Plaintiffs do not claim that ACD's participation with the soccer team or the soccer camp was involuntary. Plaintiffs merely allege that "[t]he players had been admonished by PCSD officials that it was 'in [their] best interest' to attend the camp." (1st Am. Compl. at 5, ECF No. 42).

---

[3] As the Fifth Circuit explained, "[s]chools may have such a duty by virtue of a state's tort or other laws. However, [s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Doe ex rel. Magee*, 675 F.3d at 858.

Finally, a special relationship cannot be found here since there are no allegations in the First Amended Complaint supporting a finding that the defendants' actions rendered ACD or his parents "completely unable to provide for his . . . basic needs" or that the defendants assumed a duty to provide for those needs.  *See id.* at 859.

Plaintiffs argue that another exception, for state-created danger, applies here.  Neither the Supreme Court nor the Fifth Circuit have adopted the "state-created danger" theory, but the Fifth Circuit has left open the possibility of doing so.  *Doe ex rel. Magee*, 675 F.3d at 865-66.  The Fifth Circuit has stated that a plaintiff would be required to demonstrate the following elements to state a claim under the state-created danger theory: "(1) the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff."  *Id.* at 865.  Examples of conduct satisfying the first element include "placing a plaintiff in a dangerous environment stripped of means of defense and cut off from sources of aid, or placing a plaintiff in a unique, confrontational encounter with a violent criminal."  *Young v. Austin Indep. Sch. Dist.*, 885 F. Supp. 972, 979 (W.D. Tex. 1995) (citing *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 202 (5th Cir. 1994)).  To establish the second element, deliberate indifference, the plaintiff must show (1) that the environment created by the state actors was dangerous; (2) that the state actors knew the environment was dangerous; and (3) that the state actors used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.  *Doe ex rel. Magee*, 675 F.3d at 865.

Plaintiffs argue that Jones and Connolly were aware of the dangers of providing adequate supervision and having underqualified chaperones at soccer camp, but they left the high school soccer players completely unsupervised in the dormitories.  They further claim that Jones and Connolly failed to take appropriate steps to properly train staff and chaperones of the known dangers of hazing and bullying.  These arguments are squarely addressed by the Fifth Circuit's decision in *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*  Jane was sexually assaulted by Keys on multiple occasions after he checked her out of school.  675 F.3d at 853.  Jane's parent and grandparent claimed that the school was well aware of the dangers of a faulty school check-out policy.  *Id.* at 865.  The Fifth Circuit found that these facts and allegations were insufficient to establish liability under the state-created danger theory because they did not "demonstrate the existence of an immediate danger facing a known victim."  *Id.* at 864.  The same analysis applies here.  Plaintiffs' allegations that Jones College and Connolly knew of the general dangers of a faulty supervision policy is insufficient to establish that they were aware that they placed ACD in immediate danger.

As for PCSD, Plaintiffs cite the school district's online hazing, bullying, and sexual harassment policies in support of their assertion that PCSD "was aware of an immediate danger facing a known victim."  (Pl.'s Mem. at 16, ECF No. 96).  They also claim that PCSD was aware of a specific danger of assault to ACD by his teammates.  In their First Amended Complaint, Plaintiffs have made somewhat evasive allegations regarding when they informed PCSD about the bullying and the

extent to which they are claiming that PCSD merely should have known about the bullying.  (*See* 1st Am. Compl. at ¶23, ECF No. 42) ("ACD ***and/or*** his parents complained to the PCSD/PCHS administration or soccer coach about the bullying, ***and/or*** said acts were known by ***and/or*** should have been known by PCSD.  These calls for ***and/or*** obvious need for help went unanswered.") (emphasis added).[4]

Nevertheless, these possible allegations that the defendants knew about but did not stop the bullying are insufficient to demonstrate that the defendants created a dangerous environment for purposes of a substantive due process claim.  *See R.S. ex rel. Smith v. Starkville Sch. Dist.*, No. 1:12-CV-00088-SA-DAS, 2013 WL 5295685, at *5 (N.D. Miss. Sept. 19, 2013) ("Plaintiffs have at most alleged Defendants stood by and did nothing to assist R.S. . . . They have not alleged any facts that would allow the Court to reasonably infer that Defendants used their authority to create a dangerous environment and, ultimately, the opportunity for Plaintiffs' harm.").  In *Deshaney*, for example, the State returned a child to the custody of his abusive father, who continued to abuse the child and gave him severe brain damage.  *DeShaney*, 489 U.S. at 193.  The Court held, "While the State *may have been aware* of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  *Id.* at 201 (emphasis added).

---

[4] Some of the allegations in the First Amended Complaint seem to imply that the bullying was first reported after the soccer camp.  (1st Am. Compl. at ¶¶ 36-37, 42, ECF No. 42).

Plaintiffs have not alleged that the defendants created an opportunity that would not otherwise have existed for ACD's teammates to bully him.  They also have not stated any facts supporting an inference that the defendants took any action that made it more likely that ACD would be bullied.  As a result, even if the state-created danger theory had been accepted in the Fifth Circuit, Plaintiffs' allegations would not support such a claim.

For the foregoing reasons, Connolly did not have a duty under the Due Process clause of the Constitution to protect ACD from private violence, such that Connolly is entitled to qualified immunity.  In addition, PCSD and Jones College did not have a constitutional duty to protect ACD from bullying by his teammates. In the absence of a violation of a Constitutional right, Plaintiffs' Section 1983 substantive due process claim against PCSD, Jones College, and Connolly must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  PLAINTIFFS' PURPORTED EQUAL PROTECTION, PROCEDURAL DUE PROCESS, AND FOURTEENTH AMENDMENT SEXUAL HARASSMENT AND SEXUAL DISCRIMINATION CLAIMS

"The right to be protected by the state from private violence is limited and rests on substantive due process." *Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d at 688.  For this reason, ACD's claim that the defendants should have protected him from his teammate's bullying can only be considered as a substantive due process claim, not another form of Fourteenth Amendment claim.  *See id.*  As a result, Plaintiffs' purported procedural process, equal protection, and Fourteenth

Amendment sexual harassment and sexual discrimination claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. TITLE IX CLAIM FOR SEXUAL HARASSMENT AND DISCRIMINATION

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "To be actionable under Title IX, harassment must be so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342 (5th Cir. 2022). A school district that receives federal funds may be liable for student-on-student harassment if the district:

> (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). The fifth element of a Title IX claim, deliberate indifference, is "a high bar." *Roe*, 53 F.4th at 341.

> Deliberate indifference requires the district's response to be clearly unreasonable in light of the known circumstances. This is more than negligence. Courts afford broad deference to school officials and should not second-guess the disciplinary decisions made by school administrators. Schools need not accede to a parent's remedial demands or actually succeed in remedying the harassment. However, when there is an official decision by the school district not to remedy

the violation such that its deliberate indifference causes the discrimination, a school commits a Title IX violation.

*Id.* (internal quotation marks, citations, and alterations omitted).

### A. Connolly

Title IX does not permit lawsuits against individuals, like Connolly. *See Owens v. Pearl River Cmty. Coll.*, No. 2:21-CV-140-KS-MTP, 2022 WL 1434651, at *11 (S.D. Miss. May 5, 2022); *Hundall v. Univ. of Texas at El Paso*, No. EP-13-CV-00365-DCG, 2014 WL 12496895, at *15 n.23 (W.D. Tex. Feb. 21, 2014) ("Although the Fifth Circuit has not directly addressed the issue of individual liability under Title IX in a published opinion, the majority of courts that have considered the issue have ruled that Title IX does not permit suits against individuals."). As a result, Plaintiffs' Title IX claim against Connolly is dismissed for failure to state a claim upon which relief can be granted.

### B. Jones College

Jones College cites *K. T. v. Culver-Stockton Coll.*, in support of its argument that Plaintiffs cannot assert a Title IX claim because ACD was not a student at Jones College. No. 4:16-CV-165 CAS, 2016 WL 4243965, at *1 (E.D. Mo. Aug. 11, 2016). In *K.T.*, a high school junior visited Culver-Stockton as a potential recruit for the women's soccer team. *Id.* at *1. During her visit, she was sexually assaulted at a Culver-Stockton Fraternity House. *Id.* The district court held that K.T.'s status as a non-student precluded her from asserting a Title IX claim because she "failed to allege facts to show that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity

offered by the College." *Id.* at *7. On appeal, the Eighth Circuit assumed for the sake of argument only that K.T.'s non-student status, in and of itself, did not preclude her from pursuing a Title IX claim against the college. *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017). The Eighth Circuit dismissed her claim on other grounds. *Id.* This Court will follow the lead of the Eighth Circuit and decline to hold that a non-student is per se prohibited from asserting a Title IX claim at this time. The Court will consider the elements set forth by the Fifth Circuit for demonstrating a Title IX claim for student-on-student harassment.

The first element addresses whether the college had actual knowledge of the harassment. "Specifically, the school must have actual knowledge that harassment has occurred, is occurring, or that there is a substantial risk that sexual abuse would occur." *Roe*, 53 F.4th at 341. "Accordingly, liability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* Plaintiffs claim that their First Amended Complaint contains allegations of actual knowledge on pages 10 through 11 (¶¶50-54) and pages 18 through 22. Despite a thorough review of these cited paragraphs and pages as well as the remainder of the Complaint, the Court has not located any allegation that Jones College had actual knowledge of the harassment of ACD. Plaintiffs also have not stated any facts supporting a finding that the fifth element of a Title IX claim — deliberate indifference — has been satisfied. Since Plaintiffs have not asserted facts

-14-

supporting a Title IX claim against Jones College, dismissal pursuant to Rule 12(b)(6) is appropriate.[5]

### C. PCSD

PCSD first argues that Plaintiffs have not explained how the alleged harassment was based on ACD's sex. PCSD also asserts that Plaintiffs cannot show that the sexual harassment was pervasive. Finally, PCSD claims that Plaintiffs cannot demonstrate that PCSD was deliberately indifferent to the alleged harassment. PCSD notes that the only alleged instances of sexual harassment occurred off-campus, while ACD was at soccer camp at Jones College.

The Fifth Circuit has held harassment must be "pervasive and widespread conduct with the systemic effect of denying the victim equal access to an educational program or activity" in order to support a Title IX claim. *Carmichael v. Galbraith*, 574 F. App'x 286, 290 (5th Cir. 2014). "The removal of a person's underwear without their consent on numerous occasions plausibly constitutes pervasive harassment of a sexual character." *Id.* It is irrelevant that both the victim and the harassers were male because same-sex sexual harassment is actionable under Title IX. *Id.*

---

[5] In their Memorandum, Plaintiffs request permission to file an amended complaint concerning their Title IX claim against Jones. The Court does not have sufficient information at this time to determine whether Plaintiffs should be granted leave to amend. Plaintiffs may file a separate motion to amend with a proposed amended complaint. When preparing the proposed amended complaint, Plaintiffs should take into consideration this Court's findings related to the other claims asserted in this case.

Plaintiffs allege that ACD's teammates stripped him naked on four occasions, poured semen on him, and shared videos of these assaults with others.  (1st Am. Compl. at 6-7, ECF No. 42).[6]  ACD's teammates allegedly continued to harass him and threaten him about the assault via "the Pass Christian Soccer Team Group Me Account and/or group text" after the soccer camp concluded.  (*Id.* at 8-9).  Plaintiffs contend, based on information and belief, that the "Group Me" or group text was set up and monitored by PCSD.  (*Id.* at 15).  PCSD allegedly knew about the continued sexual harassment but "did little or nothing about it."  (*Id.* at 9).  According to Plaintiffs, "ACD continued to get bullied, harassed, and threatened with no intervention of the PCSD."  (*Id.*)  Plaintiffs removed ACD from school as a result of the harassment.  (*Id.* at 10).  These are sufficient facts to state a claim for Title IX sexual harassment under Fed. R. Civ. P. 12(b)(6).

## V.  PLAINTIFFS' STATE LAW CLAIMS

### A.  CONNOLLY

Plaintiffs concede that Connolly was acting in the course and scope of his employment when the events at issue occurred.  The Mississippi Tort Claims Act provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."  Miss. Code. Ann. §

---

[6] These alleged acts fall outside the "insults, banter, teasing, shoving, pushing, and gender-specific conduct" which are "understandable . . . in the school setting" and are not actionable under Title IX.  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).

11-46-7(2).[7]  Therefore, all of Plaintiffs' state law claims against Connolly are dismissed.

### B.  JONES COLLEGE

Jones College asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims because Plaintiffs' federal claims have been dismissed.  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed *all* claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3) (emphasis added).  Since some of Plaintiffs' federal claims against other defendants remain pending, the Court cannot decline to exercise supplemental jurisdiction at this time.  Jones College has not submitted any other basis for dismissing Plaintiffs' state law claims; thus, its Motion to Dismiss is denied to this extent.

### C.  PCSD

PCSD seeks dismissal of Plaintiffs' purported state law claims for civil conspiracy, assault and battery, and intentional infliction of emotional distress.

#### 1.  CIVIL CONSPIRACY

To establish a claim for civil conspiracy, Plaintiffs must allege there was: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4)

---

[7] Out of an abundance of caution, the Court also finds that Plaintiffs' First Amended Complaint contains no facts supporting a claim for an intentional tort on the part of Connolly that would be excluded from the Mississippi Tort Claims Act's waiver of immunity.  *See* Miss. Code Ann. § 11-46-7(2).

and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (internal quotation marks omitted).  In support of their conspiracy claim, Plaintiffs argue that "PCSD set up and monitored a group chat that the student athletes used to facilitate and carry out their agreement to bully and assault ACD, to record it, and to distribute that recording.  At this stage, Plaintiff [sic] is not required to prove the inherent nature of group chat [sic] or what a jury should understand it means."  (*Id.* at 34).

PCSD's alleged actions in setting up and monitoring the group chat could *at most* satisfy the element of an overt act in furtherance of the conspiracy.  However, there are no allegations in the First Amended Complaint supporting a finding that PCSD agreed with any other party to commit unlawful acts that harmed ACD.  As a result, Plaintiffs have failed to state a claim for civil conspiracy against PCSD.

## 2. ASSAULT AND BATTERY

Plaintiffs' assault and battery claim is focused on the following alleged acts of the minor defendants, KM, CR, LL, TC, and MM:

> sexually abusing and touching the minor Plaintiff without his consent, and . . . laying hands on him, forcibly stripping his clothes from his body, shoving a Vienna sausage into his throat, throwing water on him, throwing steaming hot ramen noodles on him, putting allergens on his clothes causing itching, and pouring hot semen onto his face.

(1st Am. Compl. at 25, ECF No. 42).  Plaintiffs allege that PCSD ratified the student defendants' unlawful conduct by:

> (1) [n]ot contacting . . . law enforcement when the incidents happened;
> (2) not contacting law enforcement after being notified of the incidents;
> (3) having school officials conduct investigations after being notified,

instead of trained law enforcement professionals; and (4) not imposing meaningful, timely discipline on the perpetrators.

(1st Am. Compl. at 25, ECF No. 42).  Plaintiffs have not cited any legal authority providing that a school district can be held liable for the intentional torts of its students on this basis, and the Court has found no such authority.  Plaintiffs have failed to state an assault and battery claim against PCSD.

### 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In support of their intentional infliction of emotional distress claim, Plaintiffs claim:

> Jed Mooney, KM, CR, LL, TC, and MM engaged in outrageous conduct towards ACD, with the intention to cause or with reckless disregard for the probability of causing ACD to suffer severe emotional distress. . . . [T]he remaining defendants adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to ACD.

(*Id.* at 24). PCSD argues that it cannot be held liable for Assistant Principal Mooney's alleged acts pursuant to Mississippi Tort Claims Act, which provides that political subdivisions have not waived immunity for an employee's conduct if the conduct "constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."  Miss. Code Ann. § 11-46-5(2).

"Malice in law is not necessarily personal hate or ill will, but it is the intent, without justification or excuse, to commit a wrongful act."  *Harmon v. Regions Bank*, 961 So. 2d 693, 699 (Miss. 2007).  "[I]ntentional infliction of emotional distress can be predicated on behavior that is 'malicious, intentional, willful, wanton, grossly careless, indifferent *or* reckless.'"  *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011) (emphasis added).  Since the allegations in Plaintiffs'

Complaint appear, at this time, to concern recklessness rather than malice, the Court finds that PCSD's Motion to Dismiss the intentional infliction of emotional distress claim should be denied. *Pardue v. Jackson Cnty., Miss.*, No. 1:14-CV-290-KS-MTP, 2016 WL 3024153, at *8 (S.D. Miss. May 25, 2016) (holding that where the plaintiff did not specify the actions from which his intentional infliction of emotional distress claim arose, the court did not yet have sufficient basis for ruling on the application of MTCA immunity to the plaintiff's intentional infliction of emotional distress claim.).

### D.  MINOR DEFENDANT MM

#### 1.  CIVIL CONSPIRACY

MM first seeks dismissal of Plaintiffs' civil conspiracy claim, claiming that the facts alleged describe "childhood pranks," not intentional or unlawful conduct. The tort of civil conspiracy "exists as a cause of action to hold nonacting parties responsible." *Rex Distrib. Co., Inc.,* 271 So. 3d at 455.  Thus, each and every member of the conspiracy need not commit the unlawful overt act in order to be held liable.  *Id.*  "A civil conspiracy requires a meeting of the minds on the object or course of action." *S. Health Corp. of Houston v. Crausby,* 174 So. 3d 916, 920 (¶15) (Miss. Ct. App. 2015) (internal quotation marks omitted). "[T]he agreement need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013).

-20-

Plaintiffs allege that MM took video of four other boys stripping ACD of his clothing and physically assaulting him on multiple occasions.  He also allegedly shared the videos on social media.  The Court disagrees with MM's characterization of this alleged conduct as "childhood pranks."  Forcibly removing another person's clothing and sharing video of the event is unlawful, tortious behavior.  The alleged concerted action of the minor defendants in holding ACD down and removing his clothing while MM videoed is sufficient basis for a claim of civil conspiracy under Mississippi law.  The Court declines to dismiss the civil conspiracy claim against MM at this time.

### 2.  ASSAULT AND BATTERY

MM next argues that Plaintiffs cannot state a claim for assault and battery because MM was merely a witness to the alleged acts and made no physical contact with ACD.  The intentional tort of assault "occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 75 (Miss. 2017) (quoting *Morgan v. Greenwaldt*, 786 So.2d 1037, 1043 (Miss. 2001)).  "A battery goes one step beyond an assault in that a harmful contact actually occurs." *Id.*  Since the First Amended Complaint does not allege that MM touched ACD or did anything other than video and share the alleged events, Plaintiffs have not stated assault and battery claims against MM.  These claims are dismissed.

### 3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Lastly, MM seeks dismissal of the intentional infliction of emotional distress claim, which requires proof that:

> (1) the defendant acted willfully or wantonly toward the plaintiff . . . ; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017).  The Court finds that the alleged act of repeatedly sharing videos of a nude minor without his consent is sufficient to state a claim for intentional infliction of emotional distress.  MM's Motion to Dismiss this claim is denied.

### E. MINOR DEFENDANT LL

### 1. CIVIL CONSPIRACY

LL also seeks dismissal of the civil conspiracy claim because he claims that the First Amended Complaint does not allege the existence of an agreement.  As explained previously, Plaintiffs allege that LL and the other minors worked together to, among other things, forcibly strip ACD naked and pour substances on him.  Plaintiffs further allege that LL was ACD's roommate, and he gave the room key to the other minor defendants so that they could access ACD's room.  An agreement among the minor defendants can be implied from this concerted behavior.  *See Bradley*, 117 So. 3d at 339.  LL's Motion to Dismiss the civil conspiracy claim is denied.

## 2.  ASSAULT, BATTERY, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

LL also seeks dismissal of the assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress claims because he claims he was merely a witness to the events.  He relies on the following allegation in the First Amended Complaint, "Although LL was present for each event, and *helped with some of the restraining*, the primary actors were TC, KM, and CR."  (1st Am. Compl. at 7) (emphasis added).  Plaintiffs' allegation that LL helped restrain ACD while the other minors allegedly removed his clothing, poured things on him, and committed other demeaning acts is sufficient to state claims for assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress under Mississippi law.[8]  LL's Motion to Dismiss these claims is denied.

### CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against Brendan Connolly are dismissed pursuant to Rule 12(b)(6).  Plaintiffs' Fourteenth Amendment claims for substantive due process, equal protection, procedural due process, and sexual discrimination against Jones College and PCSD are also dismissed.  In addition, Plaintiffs' Title IX claim against Jones College, their civil conspiracy and assault

---

[8] To state a claim for negligent infliction of emotional distress, a plaintiff must prove "the usual elements of duty, breach, causation and damages."  *Fouche v. Shapiro & Massey LLP*, 575 F. Supp. 2d 776, 788 (S.D. Miss. 2008).

and battery claims against PCSD, and their assault and battery claims against MM are dismissed.  All other claims shall remain pending at this time.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [51] Motion to Dismiss filed by Defendant Jones College is **GRANTED IN PART AND DENIED IN PART**.  Jones College's alternative [51] Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [67] Motion to Dismiss filed by Defendant Brendan Connolly is **GRANTED** and the alternative [67] Motion for Summary Judgment filed by Brendan Connolly is **MOOT**.  All of Plaintiffs' claims against Brendan Connolly are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [71] Motion to Stay Proceedings filed by Plaintiffs Christopher Doxey and Jennifer Thompson is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [61] Motion to Dismiss filed by MM is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [86] Motion to Dismiss filed by Defendant Pass Christian School District is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [88] Motion to Dismiss filed by LL is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of March, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE