IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JENNIFER THOMPSON and
CHRISTOPHER DOXEY, as
Natural Parents and Next
Friends of ACD, a minor                                    PLAINTIFFS

v.                                           CAUSE NO. 1:22cv125-LG-RPM

PASS CHRISTIAN PUBLIC
SCHOOL DISTRICT; JONES
COLLEGE; JEDEDIAH "JED"
MOONEY, individually;
BRENDAN CONNOLLY,
individually; KM, a minor;
CR, a minor; LL, a minor; TC,
a minor; MM, a minor; and
JOHN OR JANE DOES 1-10                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING JONES COLLEGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Jones College seeks summary judgment for a negligence claim

arising out of the alleged bullying and harassment of ACD at a high school soccer

camp hosted on its campus.  Plaintiffs, Jennifer Thompson, and Christopher Doxey,

as Natural Parents and Next Friends of ACD, have not demonstrated that Jones

College breached any duty owed to ACD other than the duty owed under premises

liability law.  The Court finds that Jones College's [255] Motion for Summary

Judgment should be granted because Plaintiffs' claims are foreclosed by the

Mississippi Landowners Protection Act, Miss. Code Ann. § 11-1-66.1.

## BACKGROUND

Plaintiffs allege that their minor son, ACD, was bullied and sexually

harassed by his teammates on the Pass Christian High School (PCHS) soccer team at a camp organized and hosted by Jones College. Although many of ACD's allegations are disputed, the Court must construe the facts in the light most favorable to Plaintiffs while considering Jones College's Motion. A more thorough discussion of Plaintiffs' allegations can be found in this Court's Memorandum Opinion and Order Granting in Part and Denying in Part Pass Christian Public School District's Motion for Summary Judgment, which is incorporated herein by reference.

On June 16, 2021, part of the PCHS soccer team, including ACD and Minor Defendants KM, CR, LL, TC, and MM, traveled in one of PCSD's buses to Jones College for a soccer camp. The PCSD School Board approved the trip, and the team's new soccer coach, Michael Archbold, accompanied the team. While at Jones College, the teammates stayed on the second floor of a dormitory made up of four-bedroom suites, while Coach Archbold and the coaches for other participating teams slept in rooms on the first floor. ACD, KM, CR, LL, TC, and MM stayed in the same suite. At the time of the camp, ACD, KM, CR, and MM had just finished ninth grade, and TC had just finished tenth grade.

ACD claims that his teammates held him down and removed all of his clothing on four occasions during their free time in the Jones College dormitory. His teammates also shoved a Vienna sausage in his mouth and poured water from the can on his bed while he was taking a nap. During another nap, Jace, a teammate who is not a party to this lawsuit, poured a little bit of hot water and

ramen noodles on ACD.  Jace and KM also called ACD and another teammate offensive names and spit on them from a second-floor balcony.  At around midnight on the last night of camp, KM poured CR's semen on ACD's face while he was sleeping.  MM shared a video of the incident on Instagram and Snapchat.  The team left the camp early the following morning, which was a Friday.

ACD did not report his teammates' mistreatment to anyone until the following Monday, June 21st, when he told his mother.  That day, ACD's mother and father reported the incidents to PCHS Principal Boyd West, who encouraged them to file a police report.  On Tuesday, ACD and his parents met with representatives of Jones College and filed criminal charges against his teammates with the Jones County Police Chief.

Plaintiffs filed state and federal claims against Jones College and its soccer coach Brendan Connolly.  The Court previously dismissed all of Plaintiffs' federal claims against Jones College, as well as all claims pending against Connolly pursuant to Fed. R. Civ. P. 12(b)(6).  Jones College now seeks summary judgment as to Plaintiffs' only remaining claim—that Jones College negligently failed to supervise ACD and his teammates.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together

with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). "Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The Mississippi Tort Claims Act (MTCA) provides "the exclusive civil remedy" for torts committed by Mississippi and its political subdivisions. *Simpson v. City of Pickens*, 761 So. 2d 855, 858 (Miss. 2000) (citing Miss. Code Ann. § 11-46-7(1)). Jones College is a "governmental entity" covered by the MTCA. *See* Miss. Code Ann. §§ 11-46-1(g), (i); 37-4-1(k); 37-29-31(f). While Mississippi and its political subdivisions are generally immune from liability, the MTCA waives immunity "from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." Miss. Code Ann. §§ 11-46-3, -5. However, the Legislature restored sovereign immunity for some claims when it enacted Miss. Code Ann. § 11-46-9(1). *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 184 (Miss. 2018) (citing *Simpson Cty. v. McElroy*, 82 So. 3d 621, 624 (Miss. Ct. App.

2011)).

## I.    GOVERNMENTAL ENTITY LIABILITY FOR THE ACTIONS OF THIRD PARTIES UNDER THE MTCA

Jones College first argues that the MTCA's limited waiver of immunity does not apply to lawsuits based on the actions of third parties, like the minor defendants who harmed ACD.  It claims immunity because:

> the basis for Plaintiffs' claims . . . are the alleged acts of third parties who are neither a governmental entity [n]or its employees and since the waiver of immunity under the MTCA only applies to the acts or omissions of [Jones College] and its employees when acting within the course and scope of their employment with [Jones College].

Def.'s Mem. [256] at 7–8.  Jones College cites *Brown v. Delta Reg'l Med. Ctr.*, 997 So. 2d 195, 197 (Miss. 2008), and *Lindsay v. Butts*, 382 So. 3d 1140, 1148–49 (Miss. 2024), which held that governmental entities cannot be held vicariously liable for the tortious acts of their independent contractors under the MTCA.

However, Plaintiffs have not sued Jones College for the actions of the minor defendants on the basis of respondeat superior or vicarious liability.  They have sued Jones College for its *own* alleged negligence and/or the negligence of its employees in failing to properly supervise minors at a camp it hosted.  *See* Miss. Code Ann. §§ 11-46-5 (waiving immunity for claims "arising out of the torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment"); *see also Carothers v. City of Water Valley*, 242 So. 3d 138, 144–45 (Miss. Ct. App. 2017) (distinguishing direct liability claims for negligent hiring, training, retaining, and entrustment from vicarious liability claims for the tortious acts of an employee); *Adams v. Chevron USA, Inc.*, 383 F.

App'x 447, 454 (5th Cir. 2010) (distinguishing between vicarious liability for the acts of another and direct liability for a defendant's own negligence). As a result, Jones College' immunity is not waived unless another provision of the MTCA forecloses liability for Plaintiffs' claims.

## II.    DISCRETIONARY FUNCTION IMMUNITY UNDER THE MTCA

Jones College next argues it is entitled to immunity pursuant to Miss. Code Ann. § 11-46-9(1)(d), which exempts governmental entities from liability for claims related to their discretionary functions. A governmental entity is entitled to discretionary function immunity when: (1) "the activity in question involved an element of choice or judgment" and (2) "that choice or judgment involved social, economic, or political-policy considerations." *Wilcher*, 243 So. 3d at 187 (quoting *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012)).

However, before employing the discretionary function test, a court must determine whether the plaintiff's "claims give rise to a tort claim under the MTCA." *Federinko v. Forrest Cnty.*, 381 So. 3d 343, 349 (Miss. 2024). As a result, a court should only conduct discretionary function analysis if the plaintiff has satisfied the elements of negligence, which are duty, breach, causation, and injury. *Id.*

The Court will first address whether Plaintiffs have demonstrated that Jones College breached a duty owed to ACD. *See id.* ("Duty and breach of duty . . . are essential to finding negligence and [therefore,] must be demonstrated first."). The existence of a duty is a question of law. *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004).

The Mississippi Supreme Court has emphasized that the MTCA does not create duties. *Estate of Hudson*, 246 So. 3d 872, 879 (Miss. 2018) (citing *Wilcher*, 243 So. 3d at 184). "Furthermore, regulations do not create causes of action, and the MTCA does not grant a right to recover based on a mere violation of statute or regulation." *Id.* (internal citations and alterations omitted).

## A.    WHETHER JONES COLLEGE HAD A STATUTORY DUTY TO PREVENT BULLYING AND HARASSMENT

Plaintiffs argue that Jones College owed ministerial duties to ACD. The portion of the MTCA pertaining to ministerial duties provides that governmental entities are not liable for any claim:

> [a]rising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid.

Miss. Code Ann. § 11-46-9(1)(b).

Plaintiffs initially argued that Miss. Code Ann. § 37-9-69 imposed a ministerial duty on Jones College, but they now appear to concede that the statute only applies to public schools. Regardless, the Court finds that this statute, which specifically applies to "superintendents, principals, and teachers in public schools" does not apply to junior colleges like Jones College. *See* Miss. Code Ann. § 37-9-69. Therefore, cases holding that this statute imposed a ministerial duty on public schools to provide a safe environment for students do not apply to Plaintiffs' claims against Jones College. *See, e.g., J.D. v. McComb Sch. Dist.*, 347 So. 3d 199, 203 (Miss. Ct. App. 2022).

Plaintiffs also claim that Jones College had a duty to prevent bullying and harassment pursuant to Miss. Code Ann. §§ 37-11-67, -69.  Section 37-11-67 provides, "No student or school employee shall be subjected to bullying or harassing behavior by school employees or students."  Meanwhile, Section 37-11-69 states, "Each local school district shall include in its personnel policies, discipline policies and code of student conduct a prohibition against bullying or harassing behavior and adopt procedures for reporting, investigating and addressing such behavior." These statutes were enacted pursuant to a bill entitled, "An Act to Prohibit Bullying or Harassing Behavior *in the Public Schools*."  2010 Miss. Laws Ch. 508 (S.B. 2015) (emphasis added); *see also* 2017 Miss. Laws Ch. 365 (H.B. 263) (referring to "local school districts" when amending Miss. Code Ann. §§ 37-11-67, -69).

The plain language and legislative history of these statutes support a finding that they apply to elementary schools, middle schools, and high schools—not junior colleges like Jones College.  Furthermore, as Jones College correctly noted, the bullying and harassment statutes are included in Chapter 11 of the Mississippi Code, which "is replete with laws pertaining only to K-12 schools."  Def.'s Mem. [300] at 7.[1]  Since neither the Court nor the parties have uncovered any basis for applying Miss. Code Ann. § 37-11-67 or Miss. Code Ann. § 37-11-69 to junior

---

[1] Other statutes in this chapter of the Code pertain to the following issues related to younger students: school lunches, Miss. Code Ann. §37-11-7; "parental choice in assignment of multiples" to classrooms, Miss. Code Ann. § 37-11-1(2)(a); driver's education programs, Miss. Code Ann. §37-11-75; and grade point average requirements for participation in middle school and high school extracurricular activities, Miss. Code Ann. § 37-11-65.

colleges, Plaintiffs' argument that these statutes impose ministerial duties on Jones College is not persuasive.

### B.    WHETHER JONES COLLEGE ASSUMED A MINISTERIAL DUTY TO PROTECT ACD BY ENACTING INTERNAL POLICIES

Plaintiffs next claim that two of Jones College's policies impose a duty "to (1) provide a safe environment for the campers it hosted; and (2) ensure adequate supervision at all times." Pls.' Mem. [280] at 23–24. Plaintiffs first cite Jones College's Protection of Minors policy, which provides that "[n]o form of child abuse . . . will be permitted or tolerated under any circumstances" at camps and other programs where the college hosts minors. Pls.' Resp. [277], Ex. 12. The policy explains that child abuse can occur "through failure to provide adequate . . . supervision," and it also requires that child abuse be reported to the appropriate authorities. *Id.*

Plaintiffs also cite a "Camper Checklist" that Jones College prepared for the parents of minors attending the soccer camp. This handout states, "**<u>Supervision</u>**– Each team will be assigned a head coach for the duration of the camp. Coaches will also live in the dorms for the week to ensure adequate supervision at all times. Jones College men's soccer team will also be here to act as chaperones for each team." Pls.' Resp. [277], Ex. 10 (emphasis in original).

In support of their assertion, that these policies imposed duties on Jones College, Plaintiffs cite *Moss Point School District v. Stennis*, 132 So. 3d 1047 (Miss. 2014). In *Stennis*, the Mississippi Supreme Court noted that the Mississippi

"Legislature has granted the school district the authority to create a rule or regulation, e.g., through a student handbook, which imposes a positive duty on a school." 132 So. 3d at 1052. The Court remanded the case because it could not determine from the record "whether the student handbook positively imposed a duty on the school to report" a threatening text message. *Id.*

However, the precedential value of these statements in *Stennis* is uncertain since the Mississippi Supreme Court has changed the MTCA discretionary function analysis numerous times since *Stennis. See Bailey v. City of Pearl*, 282 So. 3d 669, 672 (Miss. Ct. App. 2019). In *Wilcher*, the Supreme Court rejected the assertion that manuals, regulations, and local ordinances impose ministerial duties on governmental entities. 243 So. 3d at 183–84. The Court explained that the Mississippi Legislature had intended for discretionary function immunity to shield governmental entities from liability, but MTCA plaintiffs were using discretionary function immunity as a sword that expands the liability of government entities by attempting to impose new duties. *Id.* at 184. The Court explained that "this practice is certainly not what the Legislature intended. In fact, this approach is completely backwards." *Id.* at 184; *see also Federinko*, 381 So. 3d at 349 ("[S]uch an approach improperly turns regulations into causes of action[ ] and is not based on the text of the MTCA."). "The general rule is that a mere violation of a statute or regulation will not support a claim where no private cause of action exists." *Wilcher*, 243 So. 3d at 184 (quoting *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 390–91 (Miss. Ct. App. 2016)) (alterations omitted).

Some non-MTCA cases further establish that internal policies do not impose duties that exceed those imposed by Mississippi law.  *See, e.g., Galanis v. CMA Mgmt. Co.*, 175 So. 3d 1213, 1218 (Miss. 2015) (holding that an apartment complex did not assume a heightened duty of care by adopting a policy of conducting background checks on prospective tenants).  In *Boyd Tunica, Inc. v. Premier Transp. Servs., Inc.*, for example, the Mississippi Court of Appeals held that a bus owner's policy requiring passengers to wear seatbelts did not create a duty of care because Mississippi's seat-belt law does not apply to buses.  30 So. 3d 1242, 1249 (Miss. Ct. App. 2010).  The court explained, "[W]e see no reason why [the operator] should be punished for insisting that its passengers wear seat belts, even though they are not required by law to do so."  *Id.* at 1253–54.

Furthermore, the Fifth Circuit has affirmed a district court's holding that defendants did not have a duty to conduct a background check on potential new hires, even where the defendants had internal policies requiring background checks. *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 249–50 (5th Cir. 2012).  As a result, Plaintiffs' argument that Jones College's internal policies imposed a ministerial duty is also not persuasive.

## C.    WHETHER JONES COLLEGE ASSUMED A COMMON LAW DUTY TO EXERCISE DUE CARE

Plaintiffs next argue that Jones College assumed a common law duty of due care pursuant to the following cases: *U.R.S. Co., Inc. v. Gulfport-Biloxi Reg'l Airport Auth.*, 544 So. 2d 824 (Miss. 1989); *Faulkner Concrete Pipe Co. v. Fox*, 157 So. 2d 804, 805 (1963); *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 148 So. 2d 199, 201

(Miss. 1962); *State for Use of Nat'l Sur. Corp. v. Malvaney*, 72 So. 2d 424, 431 (Miss. 1954)).  In *Dr. Pepper v. Bruner*, the plaintiff sued Dr. Pepper after one of its employees pushed a cart loaded with soft drinks into the plaintiff's leg during a delivery.  *Bruner*, 148 So. 2d at 200.  The Court explained:

> The law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons—the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or property which is *directly attributable* to a breach of such duty . . . . Stated broadly, one who undertakes to do an act or discharge a duty by which conduct of others may be properly regulated and governed is under a duty to shape his conduct in such manner that those rightfully led to act on the faith of his performance shall not suffer loss or injury through his negligence.

*Id.* at 201 (emphasis added).

The Court finds that *Bruner* does not apply because ACD's injury was not "directly attributable" to Jones College.  *See id.* at 201; *see also Deramus v. Jackson Nat'l Life Ins. Co.*, 92 F.3d 274, 281 (5th Cir. 1996) ("[W]here a party does not create or cause the peril, said party is under no obligation to prevent the consequences of the peril.").  The environment of bullying and harassment was created by ACD's teammates, not Jones College.

In addition, and perhaps most notably, the common law principle set forth in *Bruner* is more likely inapplicable to MTCA cases.  The Fifth Circuit has indicated that this rule of common law negligence may apply in Mississippi "[i]n the *absence* of applicable statutes."  *See Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Chadwick v. Bush*, 163 So. 823, 824 (1935); *Bruner*, 148 So. 2d at 201) (emphasis added).  The MTCA is the statutory system that governs the duties and

liabilities owed by Jones College; thus, there is no absence of statutory authority for the common law principle of *Bruner* to fill.  *See* Miss. Code Ann. § 11-46-9; *Foradori*, 523 F.3d at 486.

Cases related to the evolution of sovereign immunity and the creation of MTCA further demonstrate that the *Bruner* principle and the MTCA are at odds. For example, prior to the enactment of the MTCA, the Mississippi Supreme Court refused to abrogate the doctrine of sovereign immunity in *Jones v. Knight*, 373 So. 2d 254, 256 (Miss. 1979).  In a dissenting opinion critical of the majority's continued enforcement of sovereign immunity, Justice Bowling cited the *Bruner* decision and opined, "It is inconceivable to me why the above rule of law would apply to one person, firm, or corporation and not to entities of the state, particularly under modern day principles of [b]eing covered by insurance under almost every situation."  373 So. 2d at 260 (Bowling, J., dissenting).

The Mississippi Supreme Court later overruled *Jones* and cited the *Bruner* decision while abrogating judicially created sovereign immunity.  *Pruett v. City of Rosedale*, 421 So. 2d 1046, 1051 (Miss. 1982).  The Court explained, "We agree that the time has arrived when this Court should recognize that the judiciary is no longer the branch of government to supervise and control the extent to which persons with rightful claims against the sovereign may propound those claims."  *Id.* at 1051.  The Mississippi Legislature responded to *Pruett* by enacting the MTCA. *See Jackson*, 739 So. 2d at 1040 (citing *Pruett*, 421 So. 2d at 1051; Miss. Code Ann. § 11-46-1 *et seq.*).  Thus, *Pruett* has been supplanted by the MTCA.

The Court has not uncovered any majority or plurality opinion applying the
*Bruner* principle to a governmental entity since the MTCA's enactment.  Rather,
Supreme Court Justices have primarily cited *Bruner* in concurrences critical of
sovereign immunity and the MTCA.  *See, e.g., Presley v. Miss. State Highway
Comm'n*, 608 So. 2d 1288 (Miss. 1992) (McRae, J., concurring in part) ("We find
nothing in our constitution which absolves the public sector from this duty of care
[discussed in *Bruner*] . . . .").  As a result, Plaintiffs' argument that Jones College
assumed a duty of care by holding a camp or enacting policies that mention
supervision of minors is not well-taken.

### D.    WHETHER PREMISES LIABILITY LAW APPLIES

Having addressed Plaintiffs' arguments concerning the duty owed by Jones
College, the Court turns to Jones College's argument that premises liability law
applies to this case.  "Premises liability is a theory of negligence that establishes the
duty owed to someone injured on a landowner's premises as a result of conditions or
activities on the land."  *Babin v. Wendelta Inc.*, 368 So. 3d 363, 369 (Miss. Ct. App.
2023) (quoting *Fairley Constr. Servs. Inc. v. Savage*, 265 So. 3d 203, 208 (Miss. Ct.
App. 2019)).  In a premises liability case, the nature of the defendant's duty depends
on whether the plaintiff was an invitee, licensee, or trespasser at the time of the
injury. *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004).

Plaintiffs claim they have not asserted a premises liability claim against
Jones College.  They explain:

> In the present case, Jones College had a duty to supervise its minor
> camp attendees.  This duty is separate and apart from any duty to

> protect the campers from a dangerous condition it knew or should have
> known about (such as a hole in the floor of the dorm or a faulty
> elevator).  Jones College's duty to supervise does not come from its
> owning the premises, but by the conduct of its employees in providing
> a soccer camp, and the promised [sic] made to parents.  Regardless of
> where the camp took place, Jones' duty to supervise remains the same.
> If Jones takes the kids to Alabama for portions of the soccer camp, it is
> required to provide adequate and reasonable supervision.

Pls.' Mem. [280] at 17.

The Mississippi Court of Appeals has noted, "It is true that not all causes of action that arise on one's property are governed by our law which embodies premises liability." *Keith v. Peterson*, 922 So. 2d 4, 10 (Miss. Ct. App. 2005) (citing Robert A. Weems & Robert M. Weems, *Mississippi Law of Torts*, § 5–1(a) (1st ed. 2002)).  To determine whether a cause of action falls under a general theory of negligence or a specific type of negligence, such as premises liability, depends upon the facts that gave rise to the claim. *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1165–66 (Miss. 2011).  For example, when a plaintiff is injured by a property owner's employees, there is no premises liability claim but a basic negligence claim. *Id.* (citing *Foradori*, 523 F.3d at 482–83).  However, when a plaintiff is injured by a third party on the premises, or by activities occurring on the premises, the claim is one for premises liability. *Double Quick*, 73 So. 3d at 1166; *Doe v. Jameson Inn, Inc.*, 56 So. 3d 549, 553 (Miss. 2011) ("[P]remises liability is a theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of 'conditions or activities' on the land"); *see also* Miss. Code Ann. § 11-1-66.1(7).

Contrary to Plaintiffs' assertions, premises liability claims are not limited to

conditions such as a hole in a floor.  For example, in *Double Quick*, a man named

Mario was killed in a fight outside a convenience store.  *See* 72 So. 3d at 1165–66.

Mario's estate sued the store owner claiming it failed to protect him from harm.  *Id.*

at 1164–65.  In an attempt to avoid application of premises liability law, the estate

argued that its claim was a "basic negligence" claim.  *Id.* at 1165–66.  The Supreme

Court rejected this argument, holding, "Because Mario's injury was the result of an

activity that occurred on Double Quick's property, we find that [the estate's] claim

is one of premises liability."  *Id.* at 1166.

More recently, the Mississippi Court of Appeals held that premises liability

law applied to a claim for injuries suffered in a shooting that occurred in a casino

parking lot.  *Johnson v. SW Gaming LLC*, No. 2023-CA-00505-COA, 2024 WL

4539342, at *1 (Miss. Ct. App. Oct. 22, 2024).  The plaintiff claimed that the

property owner provided inadequate security, but he argued that he was not

required to prove the casino had an atmosphere of violence under premises liability

law because his claim was a simple negligence claim, not a premises liability claim."

*Id.* at *1, *8.  The court rejected the plaintiff's argument because his injury resulted

from an activity on the casino's property.  *Id.* at *10.

Here, Plaintiffs' claim against Jones College is essentially a premises-liability

claim because they argue that Jones College's failure to provide adequate

supervision of ACD and his teammates created a dangerous condition during an

activity held on Jones College's property.  The fact that Jones College invited ACD

and others to its property and charged them a fee to participate in a soccer camp

does not affect the classification of Plaintiffs' claim as a premises-liability claim; it merely grants ACD invitee status under premises-liability law. In *Corley v. Evans*, for example, the defendant landowner hosted a crawfish boil for which she charged admission. 835 So.2d 30, 32–33 (Miss. 2003). The Court held that an attendee of the event who was injured in an accidental shooting was an invitee of the landowner who hosted the party. *Id.* at 38.

The conclusion that premises liability applies here is supported by *Glover*, a case with facts somewhat similar to the facts alleged by ACD. *See Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1270 (Miss. 2007). In *Glover*, the fourteen-year-old plaintiff was raped by two other teenagers on Jackson State University's campus while attending the National Youth Sports Program. *Id.* at 1270.[2] A bus driver had accidentally left the plaintiff and her assailants at the wrong building on JSU's campus; therefore, the teenagers were unsupervised at the time of the assault. *Id.* at 1271–72. The Court reversed the lower court's award of summary judgment in favor of JSU because a genuine issue of material fact existed as to whether the assault was foreseeable. *Id.* at 1279. A plurality of the Court held:

> We are of the opinion that—given JSU's knowledge of both the boys'
> violent tendencies, coupled with the sixty-three crimes which were
> reported to have occurred on the JSU campus during the three months
> prior to the rape—a fact-finder could find that JSU failed to provide
> adequate supervision and security on its premises.

---

[2] The plaintiff in *Glover* was injured on June 18, 1993, but the MTCA did not apply to JSU until October 1, 1993. *Glover*, 968 So. 2d at 1272. However, immunity was waived pursuant to Miss. Code Ann. § 11-46-16(2) to the extent that JSU had liability insurance coverage. *Id.*

*Id.* at 1279.

The facts of the present case are even more apposite for a determination that premises liability law applies. ACD and his teammates were under the supervision of their high school coach during the camp. Specifically, ACD's school district, PCSD, has admitted it had a ministerial duty to supervise ACD and his teammates during camp. In *Glover*, however, a bus driver employed by JSU was the sole supervisor of the plaintiff and her assailants. *Id.* at 1271, 1276.[3]

Plaintiffs' claim must be categorized as a premises-liability claim. Thus, it is governed by Mississippi's Landowners Protection Act (LPA), which limits landowner liability for premises liability claims resulting from "the willful, wanton or intentional tortious conduct of any third party who is not a director, officer, employee or agent" of the landowner. *See* Miss. Code Ann. § 11-1-66.1(2). Furthermore, premises liability "may not be based on the prior violent nature of the third party" unless the property owner "has actual, not constructive, knowledge of the prior violent nature of said third party." Miss. Code Ann. § 11-1-66.1(4). The LPA provides that a "premises-liability action" is "a civil action based upon the duty owed to someone injured on a landowner's premises as a result of conditions or

---

[3] In a concurrence, Presiding Justice Waller argued that the *Bruner* principle, which the Court discussed *supra*, should have imposed a duty on JSU in addition to the duty imposed by premises liability law, but a plurality of the Court only applied premises liability law in *Glover*. *See Glover*, 968 So. 2d at 1282 (Waller, P.J. concurring) (citing *Bruner*, 148 So. 2d at 201).

activities on the land." *See* Miss. Code Ann. § 11-1-66.1(7).[4]

Generally, a landowner owes an invitee, like ACD, a duty of reasonable care for the invitee's safety. *See Rankin v. Matthews*, 197 So. 3d 933, 937 (Miss. Ct. App. 2016). However, a Mississippi landowner is no longer liable for injuries caused by the willful, wanton, or intentional tortious conduct of third parties unless the landowner "actively and affirmatively, with a degree of conscious decision-making, impelled the conduct of said third party." Miss. Code Ann. § 11-1-66.1(2). Since Plaintiffs have not provided evidence that Jones College "impelled" the intentional conduct of ACD's teammates, Plaintiffs' claim against Jones College must be dismissed pursuant to Miss. Code Ann. § 11-1-66.1.

It is not necessary for the Court to conduct discretionary function analysis because Plaintiffs have not demonstrated that Jones College breached any duty owed to ACD, *See Federinko*, 381 So. 3d 343, 351 (Miss. 2024) ("Without any allegedly tortious activity, there is nothing to which to apply the two-part, public-policy function test . . . .").

## CONCLUSION

Mississippi law does not impose upon businesses, schools, or premises owners the duty to ensure the safety of others. *See, e.g., Rhodes v. RL Stratton Props. LLC*, 376 So. 3d 385, 389 (Miss. Ct. App. 2023) (explaining that an "owner or occupant is not an insurer against all injuries"); *Summers v. St. Andrew's Episcopal Sch.*, 759

---

[4] The Mississippi appellate courts have not yet had an opportunity to apply the LPA. *See, e.g., Johnson*, 2024 WL 4539342, at *10 n.9.

So. 2d 1203, 1213 (Miss. 2000) (noting that a school was not an insurer of the safety of a kindergarten student). Therefore, Plaintiffs' apparent assertion that Jones College was responsible for directly supervising ACD and his teammates, in addition to all of the other campers on site, at all times, and to keep them completely safe, is not supported by Mississippi law.

Nevertheless, even if Plaintiffs' assertion that Jones College owed a ministerial duty to protect ACD were correct, the applicable duty of care would be ordinary care, not a duty to prevent all harm or to provide supervision at all times to teenagers who were sleeping, showering, and changing clothes during the camp. *See* Miss. Code Ann. § 11-46-9(1)(b); *see also Aldridge v. S. Tippah Cnty. Sch. Dist.*, No. 2023-CA-00418-COA, 2024 WL 3870492, at *5 (Miss. Ct. App. Aug. 20, 2024) ("Aldridge has presented no proof that [the coach] had a duty to be present in the locker room while the boys were changing into their basketball practice attire.").

The ministerial duty of supervision was owed by PCSD, while Jones College was merely a premises owner hosting an activity on its property. A premises owner like Jones College cannot be held liable for the intentional acts of third parties. Therefore, Jones College is entitled to judgment as a matter of law. To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [255] Motion for Summary Judgment filed by Jones College is **GRANTED**. Jones College is hereby **DISMISSED WITH PREJUDICE** from this lawsuit.

**SO ORDERED AND ADJUDGED** this the 30th day of November, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE